## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NATIONAL LAW CENTER ON | ) | |
| HOMELESSNESS AND POVERTY, *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | No. 88-cv-2503 (RCL) |
| | ) | |
| UNITED STATES DEPARTMENT | ) | |
| OF VETERANS AFFAIRS, *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |
| ———————————————————— | ) | |

## MEMORANDUM AND ORDER

Before the Court are the Parties' Joint Motion [580] for a Scheduling Order, plaintiffs'

Motion [586] to Compel Discovery, and defendants' Motion [589] for a Protective Order.

Having carefully considered the motions, oppositions, replies, the entire record in this case, and

the applicable law, the Court will grant in part and deny in part plaintiffs' Motion [586] to

Compel Discovery, deny defendants' Motion [589] for a Protective Order, and deny the Parties'

Joint Motion [580] for a Scheduling Order as moot.

## I.     BACKGROUND

This is an old case, inherited by this Court from the Honorable Oliver Gasch in February

2000.  As described in an early opinion of this Court, plaintiffs claimed, in 1988, that various

agencies[1] had failed to live up to their obligations under the Stewart B. McKinney Homeless

Assistance Act, 42 U.S.C. § 11301 *et seq.*, whose aim is to transform surplus government

property into facilities for the homeless.  *Nat'l Law Ctr. on Homelessness & Poverty v. U.S.*

---

[1] Defendants are the Veterans Administration ("VA"), the VA's Administrator, the Department of Defense ("DOD"), the Secretary of DOD, the Department of Housing and Urban Development ("HUD"), HUD's Secretary, the General Services Administration ("GSA"), GSA's Administrator, the District of Columbia Department of Human Services ("DC DHS"), and DC DHS's Secretary.

*Veterans Admin.*, 98 F. Supp. 2d 25, 26 (D.D.C. 2000).  In December 1988, Judge Gasch granted summary judgment and permanent injunctive relief for plaintiffs, requiring defendants to conduct more extensive "canvassing" of federal properties, to publish lists of suitable properties, and to establish outreach programs for disposing of such properties.  *See id.*  On several occasions, both Judge Gasch and this Court have issued further orders enforcing the permanent injunction.  *See id.*; *Nat'l Law Ctr. on Homelessness & Poverty v. U.S. Veterans Admin.*, 819 F. Supp. 69 (D.D.C. 1993); *Nat'l Law Ctr. on Homelessness & Poverty v. U.S. Veterans Admin.*, 765 F. Supp. 1, 13 (D.D.C. 1991).  This Court noted, in its first opinion addressing the continued enforcement of the permanent injunction, that a court's power to enforce its own injunctions is broad, particularly where—as here—the enjoined party has, in the past, failed to fully comply with the court's earlier orders.  *See Nat'l Law Ctr.*, 98 F. Supp. 2d at 26–27 (citing *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971) and *Hutto v. Finley*, 437 U.S. 678, 687 (1978)).

In June 2011, defendants moved this Court, pursuant to Federal Rule of Civil Procedure 60(b)(5), to vacate Judge Gasch's 1993 Order, which modified and furthered the enforcement of the permanent injunction.  Defs.' Mot. Vacate [568-1] 5, June 22, 2011 (referring to Order [331] Apr. 21, 1993; *see also Nat'l Law Ctr.*, 819 F. Supp. at 77).  Defendants contend that the 1993 Order is "no longer equitable" because "its objectives have been achieved" and because of "changes in the law and in circumstances."  Defs.' Mot. Vacate [568-1] 1, 6.  Defendants allege that they have "consistently complied with the Court's Order" and aver that they have an "unassailable track record."  *Id.* 7–8.  Apart from these representations, defendants' motion contains no evidence supporting their claim that changed circumstances warrant this Court's exercise of its equitable powers to dissolve the longstanding injunction.

2

In September 2011, plaintiffs filed an unopposed motion seeking additional time to respond to defendants' motion to vacate the 1993 Order.  Pls.' Mot. Extension [577] Sept. 26, 2011.  Plaintiffs indicated that good cause for the extension existed because "the parties have agreed to craft a mutually agreeable schedule that allows for some discovery, which [p]laintiffs believe is necessary to oppose [d]efendants' motion."  *Id.* at 2.  However, it appears that defendants had a change of heart regarding their cooperation with plaintiffs on discovery.  In a joint proposed scheduling order submitted in October 2011, defendants stated that plaintiffs were entitled to zero discovery, arguing that since this was originally a case brought under the Administrative Procedure Act ("APA"), plaintiffs are not entitled to discovery unless they prove defendants have acted in bad faith.  Joint Mot. Scheduling Order [580] 7–8, Oct. 14, 2011. Plaintiffs, apparently confused about how they could intelligently evaluate or oppose defendants' motion to vacate the 1993 Order absent some discovery, filed a motion to compel.  Pls.' Mot. Compel [586], Nov. 23, 2011.  Defendants responded, a few days later, with a motion for a protective order.  Defs.' Mot. Protective Order [589] Nov. 29, 2011.  These motions are now ripe for review.

## II.   ANALYSIS

The Court agrees with plaintiffs that they are entitled to some discovery.  Defendants' opposition to plaintiffs' request for discovery, based upon their belief that review of agency action is limited to the administrative record absent a showing of bad faith, Defs.' Mot. Protective Order [589-1] 8–10, reflects a pair of fundamental confusions.

First, defendants confuse a challenge to final agency action and a challenge to an agency's *failure* to act.  Defendants are correct that, in a challenge to final agency action, judicial review is ordinarily limited to the administrative record in existence at the time of the agency's

decision. *Aguayo v. Harvey*, 476 F.3d 971, 976 (D.C. Cir. 2007) (citing *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743 (1985)). In such circumstances, the district court acts like an appellate court, and the "entire case" is "a question of law." *Amer. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001). Even when an agency's factual findings are at issue, the question for the district court is still a question of law—*i.e.*, "whether [the agency] acted in an arbitrary and capricious manner." *Univ. Med. Ctr. v. Shalala*, 173 F.3d 438, 440 n.3 (D.C. Cir. 1999).

However, when it comes to agency *inaction* under 5 U.S.C. § 706(1), "review is not limited to the record as it existed at any single point in time, because there is no final agency action to demarcate the limits of the record." *Friends of the Clearwater v. Dombeck*, 222 F.3d 552, 560 (9th Cir. 2000). Said another way, if an agency fails to act, there is no "administrative record" for a federal court to review. *Telecomms. Research & Action Ctr. v. F.C.C.*, 750 F.2d 70, 79 (D.C. Cir. 1984). Therefore, "there may well be reason for discovery, since agency delay is not necessarily a discrete event resulting from a decision based upon some sort of administrative record, but may be simply . . . after-the-event justifications [] which may need to be explored by plaintiffs." *Milanes v. Chertoff*, No. 08 Civ. 2354 (LMM), 2008 WL 2073420, at *1 (S.D.N.Y. May 13, 2008).

Such is the case here, where no administrative record was ever filed. Accordingly, in Judge Gasch's opinion granting plaintiffs' motion for summary judgment in 1988, he reviewed that motion under 5 U.S.C. § 706(1) (authorizing reviewing courts to "compel agency action unlawfully withheld or unreasonably delayed"), and made findings of fact based upon a statement of facts submitted by plaintiffs (to which defendants did not object), which referenced deposition testimony, various exhibits, and other discovery. *Nat'l Coalition for the Homeless v.*

*U.S. Veterans Admin.*, No. 88-2503 (OG), 1988 WL 136958, at *4–6 (D.D.C. Dec. 15, 1988). In short, even if the Court were, at this moment, reviewing defendants' actions under the APA, absent an administrative record constituting the materials upon which the agencies arrived at some decision to which this Court, upon review, might defer, plaintiffs would likely be entitled to some discovery to enable meaningful judicial review.

However, defendants' motion to vacate the 1993 Order does not involve review of agency action or inaction under the APA. This brings us to defendants' second confusion. Defendants are also confusing a challenge to agency action generally—as was the case originally in this litigation—and a court's monitoring of compliance with its own orders. While, in reviewing agency action under the APA, the agency is ordinarily the finder of fact, when it comes to a court's enforcement and monitoring of its *own orders*, the court is the judge and jury. As noted above and repeated by Judge Gasch and this Court at various stages of this litigation, a federal court has broad discretion in using its inherent equitable powers to ensure compliance with its orders. *Shillitani v. United States*, 384 U.S. 364, 370 (1966); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46 (1991) (discussing the inherent powers of federal courts). These powers are governed by no rule or statute, "but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers*, 501 U.S. at 43 (citations and quotations omitted). The "power of a court of equity to modify a decree of injunctive relief . . . is long-established, broad, and flexible." *Salazar ex rel. Salazar v. District of Columbia*, 633 F.3d 1110, 1116 (D.C. Cir. 2011) (citations and quotations omitted). Equity would not be achieved if a court decided simply to rubber-stamp an enjoined party's unsupported self-assessment of its compliance with a court order. This is reflected in this Circuit's law, which requires courts to make factual inquiries in evaluating motions to vacate or

modify injunctions under Federal Rule of Civil Procedure 60(b)(5).  *See Petties ex. rel. Martin v. District of Columbia*, 662 F.3d 564, 571 (D.C. Cir. 2011).  With respect to defendants' motion to vacate the 1993 Order, they bear the burden, under Rule 60(b)(5), of "establishing that changed circumstances warrant relief."  *Horne v. Flores*, 557 U.S. 433, 129 S. Ct. at 2579, 2593 (2009). Defendants cannot meet their burden, and plaintiffs (and this Court) cannot test defendants' allegations, absent facts.[2]  And, as the Supreme Court has noted, "[d]iscovery is useful in determining what the facts are."  *N.L.R.B. v. Deena Artware, Inc.*, 361 U.S. 398, 404 (1960).

Therefore, the Court will allow some discovery in this case to facilitate its evaluation of defendants' motion to vacate the 1993 Order.  Such discovery will be limited to the development of those facts necessary to advance the parties' arguments with respect to defendants' motion to vacate the 1993 Order.  The Court will order the parties to meet and confer, to both narrow any differences between them on the scope of this discovery and to reach a mutually agreeable proposed schedule for proceeding with such discovery.  The parties' joint motion for a scheduling order will therefore be denied as moot.  The Court further holds that, since plaintiffs did not seek leave of court prior to serving post-judgment discovery on defendants, defendants have not waived any applicable objections they may choose to raise to such discovery as is ultimately agreed to or ordered by this Court.  Therefore, as to that subordinate issue of plaintiffs' motion to compel, plaintiffs' motion is denied.

## III.  CONCLUSION

How defendants came to believe that they could persuade the Court to lift a longstanding injunction on nothing other than their own say-so is baffling, and their failure to cooperate on

---

[2] All that this Court has seen from defendants since it inherited this case are monthly notices, informing the Court that certain reports were transmitted to plaintiffs' counsel per the terms of the 1993 Order.  *See, e.g.*, Defs.' Response [590] Dec. 9, 2011.  Other than these terse statements, the Court has received no information concerning defendants' compliance with any of the terms of the injunction.

discovery has resulted in a significant and unnecessary delay in the resolution of their own motion.  While this is an old case, it's an important one, with real consequences for people who have fallen about as far down in the depths as one can in this country.  The Court hereby advises defendants that it expects their sincere cooperation with plaintiffs in discovery going forward.

Accordingly, it is hereby

ORDERED that plaintiffs' Motion [586] to Compel Discovery is GRANTED IN PART AND DENIED IN PART; and it is further

ORDERED that defendants' Motion [589] for a Protective Order is DENIED; and it is further

ORDERED that the Parties' Joint Motion [580] for a Scheduling Order is DENIED AS MOOT; and it is further

ORDERED that the parties, within thirty (30) days of this Memorandum and Order, shall meet and confer, and shall file with the Court a proposed scheduling order—jointly if possible, separately if necessary—for the conduct of limited discovery in this case.  This discovery shall be limited to what is necessary to permit the parties to support their arguments on behalf of, or in opposition to, defendants' Motion [568] to Vacate the Court's April 21, 1993 Order.

SO ORDERED.

Signed by Royce C. Lamberth, Chief Judge, on February 3, 2012.