# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| NATIONAL LAW CENTER ON HOMELESSNESS AND POVERTY, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | Civil Action No. 88-2503 (RCL) |
| UNITED STATES DEPARTMENT OF VETERAN AFFAIRS, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) | |

## **MEMORANDUM OPINION**

Before the Court is plaintiff National Law Center on Homelessness and Poverty's (NLCHP) Motion [651] for Attorney Fees and the response and reply thereto. For the reasons below, the Court awards NLCHP with $450,329.52, or $^7/_8$ (87.5%) of the fees it seeks.

## I. BACKGROUND

Title V of the Stewart B. McKinney Homeless Assistance Act of 1987 ("McKinney Act") requires federal agencies to make their unneeded property available for use by the homeless. 42 U.S.C. § 11411. In 1988, NLCHP sued various federal agencies for violating the Act. Judge Gasch entered permanent injunctive relief imposing requirements on the defendants beyond those mandated under the statute (at the time). *NLCHP v. U.S. Veterans Admin.*, 1988 WL 136958 (D.D.C. Dec. 15, 1988). The Court subsequently modified and updated the Order on several occasions, most recently in 1993. *See NLCHP v. U.S. Veterans Admin.*, 819 F. Supp. 69 (D.D.C. 1993). The Order, as amended and consolidated in the 1993 opinion, now overlaps substantially with the statute (as amended).

Two decades later, the defendants moved to vacate the 1993 Order. ECF No. 568. After this Court compelled discovery, *NLCHP v. U.S. Dep't of Veterans Affairs*, 842 F. Supp. 2d 127 (D.D.C. 2012), widespread and longstanding violations of the McKinney Act were revealed. The main violation, and the one at the center of this Motion for Attorney Fees, was "landbanking," which occurs when "[l]andholding agencies . . . hid[e] potentially eligible properties from the Title V process." *NLCHP v. U.S. Dep't of Veterans Affairs*, 931 F. Supp. 2d 167, 174 (D.D.C. 2013).

On the merits of the Motion to Vacate, the defendants, without contesting the assertion that landbanking occurred, argued that landbanking is irrelevant to whether the defendants had been complying with the McKinney Act and 1993 Order because "the landbanking agencies' initial 'property designation decisions are committed to agency discretion by law.'" *Id.* This Court disagreed, denied the defendants' Motion to Vacate, and granted NLCHP's Motion [622] to Enforce and Modify the 1993 Order to explicitly address landbanking. *Id.* at 173–77.

Following victory on the merits, NLCHP moved this Court for an award of attorneys' fees totaling $514,662.31 under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. To resolve the threshold issue of whether NLCHP is entitled to any fees at all, the Court must address the defendants' argument on the merits. Because the Court finds that their litigation position was not substantially justified, NLCHP is entitled to attorneys' fees. In this case, the Court awards $450,329.52.

II.     **LEGAL STANDARD**

A party that prevails against the United States in an EAJA case is entitled to attorneys' fees and expenses "unless the Court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). The

2

phrase "position of the United States" includes both the underlying agency action and the United States' litigation position. § 2412(d)(2)(D). The position is "substantially justified" if it is "justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). The United States bears the burden to show that its position was substantially justified. *F.J. Vollmer Co. v. Magaw*, 102 F.3d 591, 595 (D.C. Cir. 1996).

### III.   APPLICATION

#### a.   The defendants' position was not substantially justified.

Characteristics of substantially justified positions include a reasonable interpretation of statutory text and consistency with the underlying policies. *See Blitz v. Donovan*, 740 F.2d 1241, 1244–47 (D.C. Cir. 1984). In *Blitz*, the Court of Appeals considered whether a narrow interpretation of a provision restricting participation in programs funded by the Comprehensive Employment and Training Act was substantially justified even though it did not win on the merits. *Id.* Specifically, the defendant argued on the merits that the provision that prohibited funds "for the participation of individuals who publicly advocate the violent overthrow of the Federal Government" applied only to those who incite imminent unlawful action. *Id.* at 1244. Noting that the defendant's interpretation "avoided constitutional concerns," *id.* at 1246, the Court of Appeals reversed the district court, holding that the position was substantially justified because it "complied with sound canons of statutory interpretation, had some support in the legislative history, and contradicted no definitive congressional purpose," *id.* at 1247.

By contrast, when a position would lead to inconsistent results and thwart congressional intent, it is likely not substantially justified. *See Vollmer*, 102 F.3d at 595–98. In *Vollmer*, the defendant had argued that "[a]lthough a brand new semiautomatic receiver may legally be possessed and transferred, . . . a semiautomatic receiver that has been modified into a

3

machinegun receiver and then restored to its original semiautomatic state may not be possessed or transferred, even though its reconfiguration makes it indistinguishable from a brand new semiautomatic." *Id.* at 596. Reversing the district court, the Court of Appeals held that there was "no reasonable basis" for that interpretation because of its "inconsistency." *Id.* at 598. On top of that, the Court noted that the once-a-machine-gun-always-a-machine-gun interpretation arguably conflicted with Congress's intent (prior to 1994) to permit the transfer of semiautomatics. *Id.* at 597.

In some cases, a finding that an area of law is unsettled may lead to a holding that a particular position in that area is substantially justified. *See Hill v. Gould*, 555 F.3d 1003, 1006–09 (D.C. Cir. 2009). In *Hill*, the Court of Appeals affirmed a holding that the defendant's position on the meaning of "migratory bird" in the Treaty Act—specifically, that it did not apply to birds not native to North America—was substantially justified. *Id.* at 1006. Finding that there was "nothing unusual or unsound" about the defendant's interpretation, the Court noted that it also did not "suffer from the defects common to positions that are not substantially justified. It was not flatly at odds with the controlling case law, and the [defendant] certainly did not press her position in the face of an unbroken line of authority or against a string of losses." *Id.* at 1008 (citations omitted) (internal quotation marks omitted).

The defendants' position in this case is more like that in *Vollmer* than in *Blitz* and *Hill*, and is not substantially justified. First, the plain text of the 1993 Order shows "in unmistakably mandatory terms," *NLCHP v. U.S. Dep't of Veterans Affairs*, 931 F. Supp. 2d 167, 174 (D.D.C. 2013), that landholding agencies are within the Order's scope: "Land-holding agencies *shall* report to HUD, no more than 25 days after receiving HUD's request for information, any and all excess, surplus, unutilized, or underutilized properties owned or controlled by the agencies."

4

*NLCHP v. U.S. Veterans Admin.*, 819 F. Supp. 69, 77 ¶ 4 (D.D.C. 1993) (emphasis added).

Also, the view that landholding decisions are irrelevant to compliance with the McKinney Act and the 1993 Order thwarts the purpose of both, which is to make facilities available to the homeless. As this Court noted previously, "Defendants' position is that landholding agencies may freely opt out of the Act and Order without violating either simply by refusing to provide accurate information about potentially eligible properties when that information is solicited. . . . Based on their behavior, the landholding agencies seem to have endorsed this view." *NLCHP*, 931 F. Supp. 2d at 174. The case for that position being substantially justified is thus even weaker than in *Vollmer*, where the Court of Appeals acknowledged that there was merely a possibility that the defendant's position conflicted with congressional intent.

To be sure, no court had explicitly stated that landbanking is subject to the McKinney Act and 1993 Order until this Court did in April 2013. As such, the defendants try to avail themselves of *Hill*, in which the Court of Appeals held that the defendant's position was substantially justified, in part because it did not go against a binding case or a string of losses. But the district court has long acknowledged the role of landholding agencies in supporting the underlying policy of the McKinney Act: "The cooperation of the landholding agencies is essential not only for the production of information about unused properties but for the release of those properties after they have been determined to be suitable." *NLCHP v. U.S. Veterans Admin.*, 1988 WL 136958, at *7 (D.D.C. Dec. 15, 1988); *see also NLCHP v. U.S. Veterans' Admin.*, 695 F. Supp. 1226, 1233 (D.D.C. 1988) ("[T]he Court finds that the defendants have failed to comply with the initial step of the section 501, identification of suitable property."). And in any event, this Court does not need an "unbroken line of authority" to conclude that a position that would completely unmoor a statute from its purpose is not substantially justified.

Having determined that the defendants' position is not substantially justified and therefore that NLCHP is entitled to fees, the Court will now address how much.

### b. NLCHP is entitled to $^7/_8$ (87.5%) of its fee request.

For the reasons given below, the Court will reduce NLCHP's fees across the board by 12.5%.

#### i. Claims of Excessive Hours

##### 1. Overstaffing

The defendants assert that the Court should reduce NLCHP's fees because of duplicative entries and overstaffing meetings and conferences. Defs' Opp'n 18–22. Cases in this circuit that address duplicative billing reduce fees based on *exact* duplications in hours. *See, e.g.*, *Am. Wrecking Corp. v. Sec'y of Labor*, 364 F.3d 321, 329 (D.C. Cir. 2004) (per curiam); *Davis Cnty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. EPA*, 169 F.3d 755, 761 (D.C. Cir. 1999) (per curiam). That is not the case here.

That said, there is precedent for reducing fees based on assigning a large number of lawyers to one task. For example, in *Davis County*, the Court of Appeals reduced the sought fees by approximately 50%, citing as one reason the "unusually high number of attorneys reviewing and editing briefs." 169 F.3d at 761. In this case, seven attorneys had a hand in drafting and revising the briefs. *See* Defs' Opp'n 19–20. On its face, that is an excessive number of attorneys, but because the Court is aware of the complicated and protracted nature of this case and the need to divide larger tasks into more specific ones, the Court will give this fact only minimal weight in determining fees.

With respect to overstaffing in team meetings and conferences, the Court will again give minimum weight to the ever-so-slight appearance of impropriety. In the defendants' addendum

to their opposition, they list numerous team meetings that they claim to be excessive and overstaffed. ECF No. 658-1 at 5–9. But there are only fifty meetings logged in a time period of a little more than one year. *See id.* That is about one meeting per week. Moreover, there are only five dates on which more than three attorneys logged hours for a team meeting. *Id.* (12/6/11, 5/8/12, 5/29/12, 8/14/12, 8/21/12). That is only 10% of the total meetings, which account for just a little more than 10% of the total hours logged. (In fact, the hours for team meetings in reality are much less than 10% of the total hours logged because many of the meetings are included in block-billed entries, *see infra* Part III.b.ii.1.) So if the Court were to discount *all* of those hours, which would include discounting hours for other tasks and for *all* attorneys in those meetings rather than just who the Court determines is excessive, the effect on the total fee award would be only a 1% reduction. That is minimal, especially given that the actual reduction merited, if any, is even less.

## 2. Unnecessary Work

The Court will not reduce NLCHP's fees based on alleged unnecessary work. The bulk of the defendants' arguments relating to unnecessary work stems from alleged excessive discovery. *See* Defs' Opp'n 22–27. According to the defendants, NLCHP logged 2155.8 hours of discovery. *Id.* at 23. Viewed in the context of this case, that is not excessive. The case began in 1988, and it was only in 2011, after the defendants had moved to vacate the 1993 Order with "no evidence supporting their claim," *NLCHP v. U.S. Dep't of Veterans Affairs*, 842 F. Supp. 2d 127, 129, that instances of landbanking, the central issue in this case, were unearthed by compelled discovery. Indeed, because of the massive amounts of McKinney Act violations over many years revealed as a result of discovery, NLCHP's merits brief (including exhibits) contained over 1250 pages. *See* ECF No. 621–621-42.

7

The defendants' reliance on *New Jersey v. EPA*, 703 F.3d 110 (D.C. Cir. 2012) (per curiam), is misplaced. *See* Defs' Opp'n 25. In *New Jersey*, the Court of Appeals held that 578.75 hours for the merits brief at issue was "patently excessive." 703 F.3d at 115. But the brief in that case had a narrow focus, and the movants who submitted it asked for even more compensation than was awarded to the petitioners, who addressed numerous issues in their briefing. *Id.* By contrast, here, NLCHP briefed the whole case, with a focus on the central issue, which had been hidden for many years.

### 3. Clerical Tasks

The Court will not reduce NLCHP's fees based on alleged clerical tasks. The Supreme Court has stated that "purely clerical or secretarial tasks should not be billed at a paralegal rate regardless of who performs them." *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989). Both of the Court of Appeals' cases that the defendants cite held that those tasks include delivering and filing documents. *Role Models*, 353 F.3d at 973 ("We do not understand why attorney or even legal assistant skills were required for this job."); *Am. Petroleum Inst. v. EPA*, 72 F.3d 912–13 (D.C. Cir. 1996). But the tasks the defendants complain of in this case are of a different nature. *See* Defs' Opp'n 27–29. Cite-checking, creating case binders, and note-taking, for example, are all tasks of a legal nature and not just clerical or secretarial, even if it does not require a J.D. to perform them.

### ii. Claims of Lack of Specificity

An applicant for attorneys' fees has the burden of proving the reasonableness of those fees. *See Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 970 (D.C. Cir. 2004). To do so, the applicant must provide enough detail so the court can "determine with a high degree of certainty" the existence and reasonableness of the hours claimed. *Id.* (quoting *In re Olson*, 884

F.2d 1415, 1428 (D.C. Cir. 1989) (per curiam)). That said, the court need not "know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney." *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980) (quoting *Lindy Bros. Builders, Inc. of Phila. v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167 (3d Cir. 1973)). With those general rules in mind, we now turn to the defendants' contentions regarding specificity.

### 1. Block Billing

The defendants assert that NLCHP block-billed or "lump[ed] together multiple tasks," *Role Models*, 353 F.3d at 971. Block billing is problematic because it may hinder a court's ability to determine the reasonableness of hours with a high degree of certainty. For example, one entry in *Role Models* was for 10.25 hours spent on six discrete tasks: "Telecon[ference] with R. Alexander; conference with J. Port, K. Dodd, C. Bonat regarding research; review research; draft brief; review bankruptcy materials; revise brief." *Role Models*, 353 F.3d at 971. Another logged 1.25 hours for "Revise Lis Pendens filing; call bankruptcy attorney (G. Johnson) and leave message; call circuit court regarding procedure for Lis Pendens filing; finalize draft of Lis Pendens filing." *Id.* That block billing prevented the court from verifying that certain deductions of time spent on unrelated matters were proper. *Id.*

When a fee applicant has block-billed, "the court must estimate the reduction to be made because of such insufficient documentation." *Olson*, 884 F.2d at 1429. This is a matter of discretion, and the possibilities are vast. On the high side of the spectrum, in the "relatively straightforward case" of *Role Models*, because of "inadequate documentation, failure to justify the number of hours sought, inconsistencies, and improper billing entries," and "the large number of entries that suffer[ed] from one or more of the deficiencies," the court awarded only

9

half of the requested fees. *Role Models*, 353 F.3d at 972–73. By contrast, the court applied only a ten-percent reduction in the "very important, protracted, unique and . . . very aptly handled" case of *Olson* to "disallow billings for . . . excessive, redundant, unnecessary or inadequately documented" hours. *Olson*, 884 F.2d at 1429–30.

In this case, NLCHP's bill appears to be rife with block-billed entries. As just one example, the September 22, 2011 entry logs 9.8 hours for the following tasks: "Review motion to extend; review outreach section of government's brief; meeting with Ms. St. John re: integrating DRs and ROGS into a cohesive whole; call to FOCUS re: list of other potential non-profits; call with Brandon Etheridge; draft motion to extend time in light of service issues; email to Ms. Akins re: same; confer with Ms. Ross re: unopposed motion to extend; t/c with Ms. Perryman re: same; review summary email of outreach calls from Mr. Etheridge." ECF No. 651-3 at 6. Based on that entry, the Court cannot determine with a high degree of certainty the reasonableness of those hours. It *seems* like 9.8 hours makes sense for all those tasks, but that is far from a high degree of certainty. And there are many more entries like that one. *See, e.g.*, Defs' Opp'n 30 n. 28. The Court will not look through every entry to verify whether, as the defendants claim, 400 of them are block-billed. But the Court will take NLCHP's failure to deny that allegation to mean that there are a vast number of such entries.

Instead, NLCHP argues that because of the context of the entries, the block billing does not merit a reduction in fees. *See* Pl.'s Reply 18–19. NLCHP's point that this case is more protracted and complicated than *Role Models* is well taken. But while the Court may estimate that the large number of hours logged in this case is reasonable, it cannot be sure with a high degree of certainty, in part because of the numerous block-billed entries. Therefore, NLCHP's block billing will contribute to some across-the-board reduction.

## 2. Vagueness

The defendants also assert that NLCHP's fees should be reduced because of vague entries. It is important here to distinguish between wholly inadequate entries and those with an inadequate description, as the Court of Appeals did in *Michigan v. EPA*, 254 F.3d 1087 (D.C. Cir. 2001). In *Michigan*, the Court determined that entries with nothing more listed than, for example, "Conferences calls," "Telephone conferences," or "write emails," were "wholly deficient" and therefore must be fully deducted. 254 F.3d at 1093–94. But entries that listed an action and a person but were "devoid of any descriptive rationale for their occurrence"—for example, "Telephone conference with client; conference with J. Knight"—were "inadequately detailed," and those merited only a partial reduction of the total fees (in *Michigan*, ten percent). *Id.* at 1095.

Of the entries the defendants note as vague, *see* ECF No. 658-1 at 5–25, a large number include an inadequate description (e.g., "Meeting with Skye Perryman, Anna St. John and Pat Barald" at 9); some are adequate because they include some descriptive rationale (e.g., "Conference with G. Kazakis, et al. regarding offensive discovery" at 18); and only a small number are wholly inadequate (e.g., "Reviewed emails" at 21). Under *Michigan*, the wholly inadequate entries should be fully deducted, but in this case, they make up only a small part of otherwise block-billed entries. Therefore, the Court will consider NCHLP's vague entries as a whole in fashioning an across-the-board reduction of fees.

## IV. CONCLUSION

The Court finds that the defendants' litigation position was not substantially justified, thus entitling NLCHP to attorneys' fees. Out of the $514,662.31 requested, the Court awards NLCHP $450,329.52, or $^7/_8$. The 12.5% across-the-board reduction is the result of several but

11

non-pervasive errors in submitting hours that prevent the Court from determining the reasonable of NLCHP's hours with a high degree of certainty, including block billing, vague entries, and some slight overstaffing concerns.

An Order consistent with this Opinion shall issue on this date.

Signed by Royce C. Lamberth, U.S. District Judge, on December 18, 2013.